### SAMUEL FAIRBANKS *vs.* THE TOWN OF ANTRIM.

| 2 | 105 |
|---|---|
| 69 | 378 |
| 69 | 379 |

Under our statute of February 9th, 1791, a town is liable to a penalty, if it neglect either to build or keep in repair a pound sufficient to confine cattle. A penal statute should not be construed with such strictness as to defeat what was probably the intention of the makers of it, but which the language used might otherwise not be thought to embrace.

But the declaration upon a penal statute must describe, with strict certainty, sufficient facts to constitute an offence ; and when the declaration is for a penalty, incurred by neglect either to build or repair a pound, it must allege the time when such neglect first commenced ; as each year's neglect is, by the statute, a distinct offence, and no part of one year can be joined in the declaration with a part either of a prior or a subsequent year.

THIS was a *qui tam* action for that the defendants were destitute of a good and sufficient pound from the first day of August, A. D. 1815, to the first day of August, A. D. 1816.

The defendants filed a general demurrer, and, in the argument of the cause here, October term, A. D. 1818, relied upon the following objections.

14

First, that the statute of February 9th, 1791, upon which the action is brought, imposes no penalty for not keeping pounds in repair ; but only for being altogether destitute of them.

Second, that as a penalty is incurred at the end of two years from the passage of the statute, and an additional penalty at the end of every other year afterwards the town may remain destitute of a pound, the period mentioned in the declaration includes portions of time, that belong to two distinct offences.

*R. Fletcher*, counsel for the plaintiff.

*Atherton*, for the defendants.

WOODBURY, J., delivered the opinion of the court.

The first section of our statute of February 9th, 1791, declares, " that there shall be made and maintained in every " town in this state, a good and sufficient pound," &c.(1) It then proceeds to enact, that, " if any town shall not be " provided with such pound within two years from the pass- " ing of this act, they shall forfeit and pay to any person, " who will sue for the same, the sum of ten pounds, and the " same sum for every year afterwards, that they shall be " destitute of such pound."

(1) 1 N. H. Laws 411.

A rigid construction of the above section might, as the defendants contend, limit the penalty to a neglect to build a " good and sufficient pound."

But the language is susceptible of a broader meaning, and we think it very clear, that the legislature intended to punish a neglect to repair, as well as a neglect to build, pounds.

Thus, in respect to the language, it is declared, that good and sufficient pounds shall be " *maintained*," as well as " pro- " vided." And when the penalty is declared to be incurred " every year afterwards, that they shall be destitute of *such* " pound," the word, " such," naturally refers to " good and " sufficient," which have preceded it. It needs no argument to show, that to neglect to repair a pound, when defective, is to " be destitute of a good and sufficient pound." As to the intent of the legislature, it is to be inferred, not only from these expressions, but from the circumstance, that a statute

was as necessary and useful to cause pounds to be repaired, as to cause them to be erected.

Against these views, however, it is urged, and the argument is a truism in the books, that the construction of penal statutes should be strict.

But this rule of construction, if we recur to the principles on which it is founded, appears to have been often misapplied to statutes, and should generally be confined to the declarations on penal statutes and to the evidence adduced in support of the declarations.(1)

(1) Bac. Ab. " action qui tam," B.

Thus the strictness or clearness of testimony to prove guilt may well be required to increase with the enormity of the offence charged.(2) Because the consequences are more severe to the offender and the alleged departure from that innocence, which we are bound to presume, is greater.

(2) 3 Insti. 59. —4 Bl. C. 215–6.

Again, in declarations upon penal statutes, certainty to a " certain intent in general" is required, so that the words used may not mislead either by their natural or artificial sense ; that the respondent may be clearly apprized of the nature of the accusation, and the court enabled to ascertain, with precision, whether he is charged with what amounts to any crime, and if any, with what crime. *Co. Litt.* 303, *a.—Lawes on Pl.* 54.—*2 Hen. Bl.* 530.—*4 Maul & Selw.* 215.*

The reasons, however, for so much strictness in other portions of the pleadings(3) have been questioned, and we doubt whether they ever apply to the construction of statutes. Because a statute, if of public utility, as is the uniform presumption, should be so construed as to effectuate the intention of its makers. This intention, to be sure, must be gathered from the language and subject-matter of the statute. But when once so gathered, it is no less important to society and no more severe upon the offender to enforce it in penal statutes than in remedial ones. Indeed, society at large have often more interest in a liberal extension of some penal statutes ; and, in those merely penal, not including such as inflict corporal punishment, the offender has often less at stake. Without such a construction, too, this class of statutes be-

(3) Cowp. 662. Doug. 159.

* 19 John. 36, Mills vs. Martin, 349.

*Fairbanks*
*vs.*
*Antrim.*

comes almost a dead letter—prosecutions are a mockery, and malefactors encouraged.

Nor is it unsupported by authority; for in *Powlter's case,* (1) Lord *Coke* observes, " it is frequent in our books, that " *penal* statutes have been taken by intendment, to the end " they should not be illusory, but should take effect accord- " ing to the express intention of the makers of the act ;" and in *Plow.* 86, *Patridge vs. Strange,* " it was the opinion of all " the justices," that though " things, which don't come with- " in the words" of penal statutes, " shall not be taken by " equity," yet, " the words of them may be construed bene. " ficially, according to the intent of the makers thereof." *Vide etiam. Cro. Ch.* 71.—*Leach* 1.—13 *John.* 497.—*Vattell b.* 2, *ch.* 17, *s.* 282.—*Puffendorf b.* 5, *ch.* 12, *s.* 17.*

(1) 11 Coke 34.

Hence, as it is not inconsistent with the letter and com- ports with the spirit of this statute to punish a neglect to re- pair pounds, the first objection of the defendants must fail.

The second objection, however, still applies in principle, and we are inclined to think it must prove fatal to the de- claration.

The allegation is, that the town were " not provided with " a good and sufficient pound from the first of August, 1815, " to the first of August, 1816."

The objection is, that there are no other allegations to show, that this period of time is a year during which was in- curred one full penalty ; and that, without such other alle- gations, it is doubtful, whether a portion of this time did not help to form one penalty and the residue of it, another and a different penalty.

Thus, if the town never erected any pound whatever, and such a state of facts is consistent enough with the declara- tion, the first penalty was incurred February 9th, 1793, and an additional penalty at the end of every year afterwards. Consequently the neglect from August 1st, 1815, to February 9, 1816, helped to constitute the twenty-third pen- alty or offence ; and the neglect from February 9, 1816, to August 1, 1816, helped to constitute the twenty-fourth of-

---

* 5 Wheaton 95.

fence. In this way, parts of two separate and distinct offences are united; and no neglect is alleged, which appears to have constituted one single and independent offence. But enough ought to appear in the declaration to show this with the strictest certainty. For otherwise the defendants cannot know, whether they are called to answer for one distinct offence, or for parts of two distinct offences; otherwise the court cannot judge, whether the plaintiff counts for one distinct offence, or for parts of two distinct offences, and whether he counts for a total want of a pound, or for neglect to repair one; otherwise the statute of limitations may apply to one part of the time and not to the other part, as it begins to run against a prosecution at the end of every year from the completion of the first offence;(1) otherwise, too, the difficulties in pleading it as a former recovery in bar would be insuperable, because the former recovery, if including a period belonging to two distinct offences, must be a bar to other prosecutions for both of them or for neither of them. *Quacunque via*, it would be an anomaly.

(1) 1 Saund. 295, note.—7 D. & E. 184, Madock vs. Hammatt.

Again, if the town once erected a pound, but are now altogether destitute, and such a state of facts is also consistent with the declaration, the first penalty was incurred at the end of the first year after they became destitute, and an additional penalty at the end of every year afterwards. Here all the difficulties arise, which exist in the other view of the case; and they cannot be cured without an allegation that the town first became destitute August 1st, 1815, or August 1st, in some prior year.

So, if the town had erected and retained a pound, which had merely become insufficient by neglect to repair it, and the declaration is broad enough to reach such a case likewise, the first penalty was incurred at the end of the first year after this insufficiency happened; and an additional penalty at the end of every year afterwards; which, without an allegation like that before mentioned, gives rise to the same difficulties. Where this insufficiency is not great, nor has long existed, it may be inconvenient to fix the precise time it commenced. But if the insufficiency be trifling,

a prosecution is of no utility ; or if it be great and of long standing, the public have been negligent, and suffer from their own wrong. At all events, the rules of pleading ought not to bend to these incidental difficulties about evidence.

We fully assent to the maxim, that *nimia subtilitas in jure reprobatur.*(1)

(1) 2 Hawk. ch. 25, b. 2, sec. 61, p. 325.

But principle and precedents, so far as they bear upon this case, seem to favor the demurrer. It has not been our good fortune to find any authorities directly in point either way. But it is remarked in *Bac. Ab.* " *action qu. tam.*" B., that " where the penalty is given for continuing such a prac- " tice for a certain time, or for not doing such an act within " such a time, the information must be *very particular* in " bringing the offence within the time prescribed." *Vide etiam. Cro. Ja.* 529, *Parker vs. Cursar & Ux.*—*Cowp.* 640, *Cropps vs. Dunder et al.*—10 *Mod.* 26, *The Queen vs. Matthews.*—*Lutw.* 162.—*Hawk. Pl. C. b.* 2, *ch.* 26, *sec.* 19, 23, 75.

(2) 2 Maul & Selw. 534.

In *Cathcart vs. Hardy,*(2) where a penalty was inflicted on a spiritual person for absence from his benefice eight months in any year, the court held it to mean the year next preceding the date of the writ. The statute specified no day or month when the offence should begin ; nor any length of

(3) 5 Taunt 2, s. c.

time " *afterwards,*" which should complete it.(3) But that construction is not applicable to this statute ; and if it was, the declaration would still be bad ; because all the neglect alleged is not during the year immediately preceding the date of the writ.

*Declaration adjudged bad.*