Wilson *v.* Wentworth.

## WILSON *v.* WENTWORTH.

Under the statute of December, 1805, the owner of improved land upon any river could not take and convert to his own use any logs carried or lodged by the water upon such land, unless they had remained upon such land from before the first day of May until after the first day of November.

It was not necessary to give such right, that there should be an appraisal of the damages done by such logs.

TRESPASS for taking and carrying away a pine timber log, the property of the plaintiff, and converting the same to the defendant's use. Plea, the general issue.

Upon the trial, it appeared in evidence that the log in question was one of a quantity of logs, cut by the plaintiff in the winter of 1840–41, and put into Israel's river, to be floated down to the Connecticut. In its passage down the Israel's river, it was carried by a rise of the water upon the improved meadow land of the defendant, and there lay until some time in the month of September, 1843, when it was removed by the defendant, and cut up by him, and converted into shingles.

On the part of the defendant, it was contended that the log in question was floated on to the meadow of the defendant, by a rise of the water in said river, prior to the first day of November, 1842; and on the part of the plaintiff, it was contended that it was carried on to said meadow in the freshet in the spring of 1843; and evidence was introduced by both parties upon those points.

There was no evidence of an appraisal of the damages occasioned to the defendant's meadow by said log.

The court instructed the jury that if they should find that the log was carried on to the defendant's meadow by the water at any time so long prior to the first day of November, 1842, that the plaintiff could reasonably have removed it before that day, and it continued there upon said meadow until that day, without payment of the damages occasioned by it to the meadow, the log was thereby forfeited to the owner of the land, and the defendant was justified in taking and converting it to his own use; otherwise it was not forfeited, and the plaintiff was entitled to recover; to which instructions the plaintiff excepted.

The jury returned a verdict for the defendant, and the plaintiff moved that the same may be set aside and a new trial granted, on account of the supposed erroneous instructions of the court.

*Cooper* and *Bellows*, for the plaintiff.

*Fletcher* and *Burns*, for the defendant.

Wilson *v.* Wentworth.

BELL, J.   Two questions are raised by this case.   The first, upon the instruction given to the jury, relative to the length of time required by the statute to authorize the taking of lumber by the land owner to his own use; and the second, whether an appraisal of the damages is necessary before the land owner can convert the lumber to his use.

The statute in force before the Revised Statutes, applicable to these questions, is that of December 28, 1805, which in substance provided that if any lumber,—put into any river or stream running thereinto,—and by the water carried or lodged upon any improved land, and not taken away by the owner, or his agent, before the first day of May, annually, the owner of the land may detain such lumber till the owner of the lumber pay all damage; and if the parties do not agree upon the damages, they are to be settled by the selectmen, or three justices of the peace.

If such lumber is not removed by the owner on or before the first day of November, annually, the owner of such land may take and convert the same to his own use.   Provided, that when the owner shall have paid the damage and cost, he shall have liberty to remove the same before the first day of May following.

We think the effect of this statute was not correctly stated in the instructions given to the jury.   The owner of the land is authorized to take and convert to his own use *such* lumber as was put into a river or stream, and was carried or lodged by the water upon improved land, and was not taken away by the owner by the first of May, nor removed by the first of November.   If *such* lumber is not removed, refers to the lumber before spoken of, which clearly must have been carried by the water on improved lands before the first of May.

This statute is penal, and is, therefore, to be construed strictly, but, nevertheless, so as to effect the intention of the legislature.   Effect is to be given to the plain meaning of the language, and the strict construction to be applied only where the effect is reasonably open to question.   *Fairbanks* v.

*Antrim*, 2 N. H. Rep. 105; *Woodbury* v. *Thompson*, 3 N. H. Rep. 194; *Pike* v. *Jenkins*, 12 N. H. Rep. 255.

It seems evident from the language of this statute, that it was not designed to apply to all cases where lumber should be carried by the water of rivers upon adjoining lands. Thus in the first clause, the application is limited to such "lumber as has been or may be put into any river or stream," clearly excluding all lumber which may have been washed away by freshets, and which had not been *put in* the river or any stream. The second clause is also restricted. It applies to lumber carried upon *improved lands*, though it is apparent that great injury might as well result from the lodging of masses of logs upon lands not improved, obstructing the water and causing the banks and intervals to be worn away.

The next clause upon which this question arises adds another restriction,—"which may not be taken away by the owner, &c., on or before the first day of May annually." This applies only to lumber, which, being upon the improved land, is not removed on or before the first of May. All the subsequent provisions of the statute expressly and distinctly refer to *such* lumber as has been described, and not to lumber generally. The cases of damage arising from lumber not *put into* the river or streams; from lumber not carried upon *improved* land; and lumber not capable of removal on or before the first of May in any year, because not then floated upon the land, are not embraced by this statute, and the parties are left to their remedies at common law.

This statute was apparently designed to protect the land owners from damages occasioned by *running* logs in the spring, when business of that kind is usually transacted, and the greatest danger is to be apprehended, leaving the cases casually arising at other seasons, to the ordinary remedies.

This statute came into discussion in the case of *Walker*

*v. Sawyer*, 13 N. H. Rep. 196, though no question was de- cided; and it seems evidently to have been the impression of the learned judge who delivered the opinion, that it could hardly have been intended that where the lumber should. come upon the land on the thirty-first day of October, it should be forfeited within two days after, without any ap- praisal.

In the charge under consideration, the court avoid the manifest unreasonableness of the construction, that the lum- ber should be deemed forfeited, after lying but a day or two upon the land, by holding that if the log was carried upon the land at any time so long before the first day of Novem- ber, that the plaintiff could reasonably have removed it before that day, and it continued until that day without payment of damages, it was forfeited.

It seems to us that a construction which leaves a party to incur a penalty, not upon any definite misconduct, or upon any specified neglect, but upon an omission to do what he might reasonably have done, is too uncertain, and is not to be adopted unless it is necessary to avoid some greater mischief, not contemplated by the Legislature. Such would be this case, we agree, if no other mode existed of avoiding the construction which should create a forfeiture of lumber lodged immediately before the first of November.

In the case before adverted to, *Walker v. Sawyer*, an inti- mation is made that no forfeiture of lumber can be incurred unless there has been an appraisal of the damages. The point was not decided, and the intimation is thrown out with a *quære*, as a matter regarded by the judge as by no means clear.

It is upon the doubt thus suggested that the second point in the case is raised. We have examined the statute with some care, and are not able to assent to the view taken in *Walker* v. *Sawyer*.

The land owner has the right to detain lumber not re- moved before May 1, until the damages are paid. This right

16

Wilson *v.* Wentworth.

is entirely distinct from any rights growing out of the right to take and convert the lumber to the use of the land owner, (for convenience spoken of as a forfeiture, though not technically such.) The mode of determining those damages, if the parties do not agree, is fixed by appraisal, but the right to detain does not in any way depend upon it.

If such lumber, that is, lumber *put into* the river, carried by the water upon improved lands, and not taken away before the first of May, is not removed before the first of November, the land owner may convert it to his own use. This right is not, in terms, made to depend upon any appraisal of the damages, and we think no such dependence can be reasonably implied. The owner of the lumber is deprived by the statute of the right of removing his property after the first of May, without payment of the damages. They are, of course, from their nature uncertain, and unless some provision was made for their determination, the disagreement of the parties as to the amount, would render the prohibition to remove the property in effect perpetual. The appraisal was designed to obviate this difficulty. There is no connection between the fact of an appraisal and the forfeiture, except that mentioned in the last proviso alluded to, that the owner may remove the logs the succeeding winter or spring, if he has paid the damages and cost, which may be either those agreed by the parties, or those appraised by the selectmen.

Our opinion is that a forfeiture may be incurred without any appraisal of damages.

*Verdict set aside.*